YELLOW MILL VILLAGE RESTAURANT, INC., ET AL.
*vs.*
LIQUOR CONTROL COMMISSION

Court of Common Pleas    Fairfield County    File No. 44795

MEMORANDUM FILED MARCH 23, 1944.

*Michael Strauss,* of Bridgeport, for the Plaintiffs.

*Frank J. DiSesa,* Assistant Attorney General, for the Defendant.

CULLINAN, J. Section 466f of the 1941 Supplement to the General Statutes, as amended by section 534g of the 1943 Supplement to the General Statutes, provides, in part: "No person, who is, by statute or regulation, declared to be an unsuitable person to .hold a permit to sell alcoholic liquor, shall be employed in drawing or preparing any alcoholic liquor at any bar on any permit premises in this state where alcoholic liquors are sold for consumption thereon."

Mindful of its fundamental function to restrain unsuitable persons from seizing liquor outlets by subterfuge or from engaging in the liquor industry, the Liquor Control Commission of the State of Connecticut, within its conceded statutory regulatory powers, adopted, on December 30, 1942, a regulation providing in its material aspects: "Upon the submission of a renewal application, each permittee, shall file with the Commission a list of the names, ages, addresses and records of arrest, if any, of all persons engaged by him in the handling, distribution or sale of alcoholic liquors. Supplemental lists shall be filed within a reasonable time after the employment or discharge of any person. No person who has been found by the Commission to be unsuitable under the Liquor Control Act shall be employed or engaged, either for hire or otherwise, in the handling, distribution or sale of alcoholic liquor under any permit."

This Commission regulation, supplementing and amplifying, as it obviously does, the aforesaid statutory prohibition, continues in force, having remained effective, without interruption, from the date of its adoption. Thus, by way of summary and in effect, Connecticut has said to the liquor industry: "You shall employ no person to draw or prepare liquor at any bar of this State when that person has been declared unsuitable either by statute or by a finding of unsuitability on the part of the Liquor Control Commission."

The appellants include not only Yellow Mill Village Restaurant Incorporated, a Connecticut corporation and the owner of restaurant premises at 1837-1843 Fairfield Avenue, Bridgeport, but also Mrs. Katherine Racz, likewise of Bridgeport, the corporation's permittee, and, as such, charged with the conduct, management and supervision of the permit premises. The corporate structure, in the broad and loose sense, may be said to be a family enterprise, since a very substantial portion of the corporate stock is owned by Mrs.

Racz and members of her family. Thus, for all practical purposes, a nominal corporate family cloak has been draped about a family permittee to provide her with such privileges and immunities as flow from corporate existence and activity.

In August, 1941, the initial restaurant permit was issued Mrs. Racz by the Liquor Control Commission, with its life fixed for 12 months unless sooner revoked or suspended. Thereafter, in August, 1942, the permit was renewed for a like period under like conditions. And with the approach of August, 1943, and the expiration of the 1942 permit, Mrs. Racz, as the corporate permittee, filed a renewal application, anticipating that a 1943-1944 permit would be issued. Appended to this renewal application was a list of the names, ages and addresses of persons employed by Mrs. Racz and the corporation in the handling, distribution and sale of alcoholic liquors. Included among the employees appeared the name of Paul Szilagyi with his age and address set after his name, together with the following notation: "No arrests."

Shortly after the submission of this renewal application and supplemental document, Mrs. Racz was ordered to appeear for hearing before the Liquor Control Commission, after which she was notified: "This is to advise that your right of use of restaurant liquor permit No. R. 2714, for premises located at 1837-43 Fairfield Avenue, Bridgeport, has been revoked by the Commission after due hearing had on Monday, September 13, 1943. The reason for this revocation is: Violation of section 466 of the 1941 Supplement to the General Statutes: Employing an unsuitable person on permit premises in this State where alcoholic liquors are sold for consumption thereon; namely, Paul Szilagyi."

It is to challenge this order of revocation that the appellants are before the court.

On November 12, 1935, Paul Szilagyi was arrested for violating the Connecticut Liquor Control Act in that he was charged with Sunday sales contrary to the privileges of a permit then outstanding in his name. This matter was ultimately nolled before the City Court of Bridgeport. Thereafter, On January 13, 1936, Szilagyi was again arrested and charged with a violation of the State Liquor Control Act. Upon an appeal to the Court of Common Pleas from a conviction before the City Court of Bridgeport, he was acquitted.

Subsequently, on April 15, 1937, Szilagyi was again arrested, charged with a so-called liquor violation, and convicted before the City Court of Bridgeport. In this instance he also appealed to the Court of Common Pleas where the conviction was sustained and the accused fined $100 and costs. Shortly thereafter, on May 5, 1937, a tavern permit held by Szilagyi was revoked by the Liquor Control Commission since the offense, upon which the conviction had been predicated, consisted of selling liquor in violation of the privileges of this tavern permit, which permitted the sale of beer only.

Apparently chafing under his inability to hold a permit, Szilagyi, through counsel, on January 19, 1939, made application for a restaurant beer permit, which application was returned by the Liquor Control Commission since section 1046c of the 1935 Cumulative Supplement to the General Statutes, then in force, prohibited the issuance of a permit to any person convicted of a violation of the Liquor Control Act within two years from the date of conviction. Patently this application was premature since his conviction occurred on April 15, 1937, and since the returned application was dated January 19, 1939.

A continuing desire to engage in the liquor industry led Mr. Szilagyi, on December 9, 1940, to apply to the Liquor Control Commission for permission to become an employee of the Fountain Grill, 1843 Fairfield Avenue, Bridgeport, which establishment, incidentally, is the one now operated by the appellants, although in justice to them it should be noted they were not its owners and operators in 1940. This request for permission to become an employee was refused on December 16, 1940.

Thereafter, Mr. Szilagyi, as a prospective permitteee or employee in the liquor industry, appears to have been lost to view until a date uncertain in 1942 when he became a bartender for the appellants. His employment by them continued without the knowledge, consent, or approval of the Liquor Control Commission. Only when Mrs. Racz's 1943 renewal application and supplemental statement were reviewed was it discovered that Szilagyi was on the premises, as an employee, engaged in the handling and distribution of liquor.

The nub of the appellants' argument is that the Commission has acted arbitrarily and illegally because Mr. Szilagyi has

not been declared ("in a formal or public manner") to be an unsuitable person to be employed on permit premises. Thus, they say, the imposition of a drastic penalty on Mrs. Racz, by reason of the employment of Szilagyi, is manifestly unfair since the absence of a formal declaration of unsuitability by the Commission left her without knowledge of his disqualification as an employee.

Further say the appellants, section 466f, *supra,* prohibits the employment of any person who is by statute or regulation *declared* to be unsuitable, while the Commission's regulation, quoted above, prohibits the employment of any person who **has been** *found* by the Commission to be unsuitable. Thus a finding of unsuitability by the Commission, it is said, is not to be regarded as tantamount to a declaration of unsuitability.

The grievance of the appellants is not well grounded. The mere revocation of Szilagyi's tavern permit, following his criminal conviction, constituted a finding of unsuitability within the meaning of the regulation of the Liquor Control Commission. Likewise the revocation of his tavern permit and the termination of his status as a permittee constituted a declaration of unsuitability within the intendment of the Liquor Control Act. Certainly, Szilagyi was aware of the finding and declaration of unsuitability. His unsuccessful attempts in 1939 and 1940 to remove the disqualification offer abundant evidence of his consciousness of its continuing nature.

By the same token, Mrs. Racz, in the light of her testimony before the Liquor Control Commission and the court, was wholly aware of the 1937 revocation of Szilagyi's permit. Her present contention is that she was uncertain as to the effect of the revocatory action. The sole responsibility for ascertaining the effect of the revocation was on Mrs. Racz. *Guastamachio vs. Brennan,* 128 Conn. 356. Since she elected to employ Mr. Szilagyi with knowledge of the revocation and without determining its effect, then she must abide the consequences.

It is apparent that both the General Assembly and the Liquor Control Commission have fixed a commendable policy, in so far as the same is capable of execution, designed to restrain the handling of liquor by undesirable and unsuitable persons. The action of the Commission in revoking Mrs. Racz's permit was in strict accord with that policy and can-

not be regarded as an abuse of discretion. *Rose vs. Liquor Control Commission,* 124 Conn. 689.

Through this entire matter there appears the inescapable suggestion that the business acquaintanceship of Mrs. Racz and Mr. Szilagyi amounted to something more than a casual *employer-employee relationship.* Commencing in 1935 and continuing thereafter, both parties engaged in business transactions for their mutual benefit. It is difficult to believe that Mrs. Racz was unaware of Szilagyi's arrests when she ratified the notation "No arrests" through her execution of the supplemental statement which accompanied her 1943-1944 renewal application. Likewise it is equally difficult to believe that she was unaware of the effect of Szilagyi's disqualification which followed the revocation of his tavern permit in 1937. The entire record justifies the fair inference that the parties knowingly and consciously conspired to evade reasonable statutory and administrative regulations, hopeful that Szilagyi's employment would pass undetected.

The appeal is therefore dismissed.